**STEWART WARNER CORPORATION, Plaintiff-Appellant,**

v.

**BURNS INTERNATIONAL SECURITY SERVICES, INC., Defendant-Appellant,**

v.

**AETNA CASUALTY & SURETY COMPANY, Garnishee-Defendant-Appellee.**

No. 74–1226.

United States Court of Appeals, Seventh Circuit.

Argued April 2, 1975.

Decided Dec. 8, 1975.

As Amended Dec. 9, 1975.

Jay A. Canel, H. C. Capper, Chicago, Ill., for appellant.

Francis D. Morrissey, Chicago, Ill., for appellee.

Before FAIRCHILD, Chief Judge, and McALLISTER, Senior Circuit Judge *, and STEVENS, Circuit Judge.

FAIRCHILD, Chief Judge.

This appeal requires the court to determine, under a comprehensive liability policy, including certain endorsements, whether goods of plaintiff Stewart Warner, stored in a warehouse of Cory Corporation, were in the "care, custody or control" of the named insured, Burns International Security Services, Inc., which was providing a watchman under contract with Cory. In the principal action [1] Burns has been found liable to Stewart Warner for damage caused by the intentional act of Burns' watchman. In a garnishment proceeding after judgment, Stewart Warner and Burns claim that Aetna, the insurer, is liable for the full amount of the liability of Burns ($142,-246 plus interest and costs).

Aetna contends it is liable only for $25,000 less allocated loss expense of $19,643.07, which it has tendered. The district court, on motion for summary judgment, entered judgment for Aetna. Stewart Warner and Burns have appealed.

On August 4, 1970, Burns hired Richard Anderson and assigned him as night watchman at the Cory warehouse. Anderson set fire to the warehouse the second night, and the damage resulted.

Burns was found liable on separate counts alleging negligence in hiring Anderson and statutory liability of a certified detective agency for wrongful acts of its employee. *Stewart Warner Corp. v. Burns Internat'l Sec. Serv., Inc.,* 353 F.Supp. 1387 (N.D.Ill.1973).

The contract was made in New York and the damages arose out of activity in Illinois. The parties appear to concede there is no relevant difference between the laws of these jurisdictions.

The policy contains several coverages. We are concerned with Comprehensive General Liability Insurance (Except Automobile). Under the insuring clause, property damage must have been caused by an "occurrence." "Occurrence" is defined as "an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured." Aetna takes the position that the intentional destructive act of the named insured's employee which produced the damages was not an "occurrence," as so defined, and, absent Endorsement 40, later referred to, Aetna could not be liable under the policy.

Exclusion (i)(3) excludes from the comprehensive general liability insurance "property damage to . . . property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control."

Endorsement No. 5 reflects at least some concern of the parties that in the absence of the endorsement liability for damage to property as to which Burns had agreed to provide protection service would not be covered because when such service was being performed it would be said that the property was in the care, custody or control of Burns.

This endorsement, entitled "Care, Custody & Control Exclusion Eliminated," provides that, with one exception, "such

* Senior Circuit Judge Thomas F. McAllister of the United States Court of Appeals for the Sixth Circuit is sitting by designation.

1. Jurisdiction was founded on diversity.

insurance as is afforded by the policy under property damage liability shall also apply to injury to or destruction of property but only for which the named insured has entered into a contract with others to provide protection services." It further provides that Exclusion (i)(3) shall not apply to the insurance provided by the endorsement, and that the limit of liability under the endorsement shall be $25,000 per occurrence including allocated loss expense, applicable to each client of the named insured.

Endorsement No. 7 reflected concern over the question, previously referred to, whether an act of an employee of Burns intentionally causing damage, would be, as to Burns, an "occurrence." It provided in part: "Bodily injury or property damage caused intentionally by any employee of the named insured shall be deemed an occurrence provided such bodily injury or property damage was not caused intentionally by or at the direction of the named insured." The limit per occurrence was $25,000. Endorsement No. 40 deals with the same matter as No. 7 and canceled and superseded it. It repeats the provision of No. 7, just quoted, and specifies that the coverage applies only as respects the named insured. The principal change from Endorsement No. 7 deals with limits of liability. After stating the limit of $250,-000 each person and $500,000 each occurrence for bodily injury and $250,000 per occurrence and aggregate for "Property Damage (as respects property not in the care, custody or control of the named insured)," it states the limit: "Property Damage—$25,000 per occurrence including allocated loss expense, applicable to each client of the named insured as respects injury to or destruction of property for which the named insured has entered into a contract with others to provide protective services."

■ Of course it is possible that a Burns employee's intentional acts or omissions might cause damage to property as to which Burns has contracted to provide protective services, but as to which it was not providing such service at the time damage was caused and for which Burns became liable. Thus there could be circumstances in which liability for property damage would appear literally to be subject to both limits. Nevertheless, bearing in mind that Burns is in the business of providing protective services, the special relationship between Burns and the property being guarded, the apparent intention to limit coverage to $25,000 with respect to damage to property as to which Burns has contracted to provide such services, and the implication in Endorsement No. 40 that property not in the care, custody or control of the named insured is different from property for which the named insured has contracted to provide protective services, we think it the natural and reasonable interpretation of the policy and endorsements that when Burns is providing night watchmen service, guarding a warehouse pursuant to contract, the contents of the warehouse are during that time, in the care, custody or control of Burns, and any liability of Burns for property damage caused during that time is limited, as stated in Endorsement No. 5 and 40, to $25,000 per occurrence including allocated loss expense, applicable to each client of the named insured.

We might well rest our decision solely on the particular terms of this insurance policy and endorsements, as above discussed. We have, however, examined the cases relied on by the parties. Although it is difficult to discern a clear test for the applicability of the care, custody or control exclusion, we conclude that the decisions, particularly of Illinois and New York, require no different result.

Appellants Stewart Warner and Burns point out, as did the district court, that the watchman's role is ordinarily very passive, and that except possibly for some emergency, he would not be called on to have any physical contact with any of the stored goods. They assert that it is a universal rule that the "care, custody or control" exclusion is not applicable

unless the insured is required to exclusively possess and handle the property.

█ Although, as will be demonstrated, decisions require that, in order for the exclusion to operate, the insured's possessory control must be exclusive at the relevant time, and must not be "temporary access" or "limited possession," and that the property damaged must be a necessary element of the work being done by the insured, and not merely incidental to the property upon which the insured is working, we find no requirement that the insured's relationship to property involve intimate handling of each item of such property. See 12 Couch on Insurance 2d § 44:42 ff; Anno = Liability Insurance — Custody of Insured, 62 A.L.R.2d 1242.

In *Employer's Mutual Casualty Co. v. Trinity Universal Insurance Co.*, 376 S.W.2d 766 (Tex.Civ.App.1964), the Texas Court of Appeals held that a clause excluding from coverage property "in charge of" the insured excluded liability for damage to a parts warehouse caused by the negligence of the insured, who was caretaker.

The court said, at 767, "A 'watchman' perform duties which are approximately 90% passive, i. e., merely being in a place to guard premises or personal property where any threat to the safety thereof would in all probability come to his attention—so that affirmative protective action might be taken should occasion therefor arise. Essentially a 'watchman' is 'in charge of' property under his observation or protection."

Although the case dealt with an "in charge of" exclusion in an automobile liability policy, rather than a "care, custody or control" exclusion in a general liability policy, there is little or no distinction between the two. 12 Couch on Insurance 2d § 44:432.

In *Maryland Casualty Co. v. Holmsgaard*, 10 Ill.App.2d 1, 133 N.E.2d 910 (1956) an Illinois court held that bailment clearly includes custody and control. The exclusion, however, is not limited to situations where there is bailment. *Leiter Electric Co. v. Bituminous Casualty Corp.*, 99 Ill.App.2d 386, 241 N.E.2d 325, 327 (1968). In *Leiter* the court distinguished between temporary access and limited possession and care, custody or control, and held that the insured electrical contractor did not have care, custody or control of a water main, damaged by his employees while connecting grounding wires to the pipe. The pipe crew was working ahead of the electricians, laying the pipe, and behind them, filling the excavation. The Court said:

"In our view of this case the plaintiff had temporary access to and limited possession of an area of the water main, but not care, custody or control of such main the same remaining with the pipe crew which excavated the trench, laid and connected the pipe." 241 N.E.2d at 328.

In *Bituminous Casualty Corp. v. Chicago, R. I. & P. R. Co.*, 8 Ill.App.3d 172, 289 N.E.2d 464 (1972) the insured contractor was engaged to remove creates from an overturned freight car, and accidentally set fire to the freight car while using a cutting torch to aid in the removal of the crates. The court held that the car was in care, custody or control of the railroad, and that the insured had only temporary access to the property. Railroad personnel were present, and had suggested use of the cutting torch.

█ That the exclusivity of possession is decisive, and may be apparent from the circumstances, though such possession is of short duration, is borne out by *Hardware Mutual Casualty Co. v. Mason-Moore-Tracy, Inc.*, 194 F.2d 173 (2d Cir. 1952). The court held that where an insured mover of heavy machinery caused extensive damage to an elevator while moving such machinery, the insured had care, custody or control of the elevator. Although the insured had no greater right than others to use the elevator, his actual use excluded others.[2]

---

**2.** Although one might consider there is some inconsistency between this decision and those based on temporary access, limited possession, or incidental to the work rationales, this decision is more favorable to the existence of the exclusion.

The instant case presents a situation where intimate physical handling is minimal, but the right and need to exclude others is inseparable from the nature of the protective service being rendered. There is nothing to suggest that at the time of the fire, Burns' power to exclude others from the warehouse was being shared with anyone else.

■ Though Burns' exclusive control over the premises was not continuous, exclusive control exercised for short periods need not be classified as "temporary access" or "limited possession." In *Monari v. Surfside Boat Club, Inc.,* 469 F.2d 9 (2d Cir. 1972), the court held that a dockyard operator who dropped a pleasure boat while lifting it from the water with a crane had care, custody or control of the boat during the process, even though the boat owner was on hand to make his own repairs.

■ Our holding that the goods in the warehouse were in the care, custody or control of Burns at the time of the fire for the purpose of the exclusion is consistent with the policy served by "care, custody or control" exclusions in liability insurance contracts. One purpose is to prevent the general liability insurer from becoming a guarantor of the insured's workmanship in his ordinary operations. Failures of workmanship are a normal business risk which the insured is in the best position to prevent. If such risk be transferred to the insurer via general liability provisions, the cost of general liability coverage will be greater. The "care, custody or control" exclusion is designed to avoid such result. See Cooke, Care, Custody or Control Exclusions, 1959 Ins.L.J. 7, 10, quoted in *Royal Indemnity Co. v. Smith,* 121 Ga.App. 272,

173 S.E.2d 738 (1970); Ramsay, The Care, Custody, Control Exclusion of Liability Insurance Policies, 1958 Ins. Counsel Journal, 25:288.

The policy of minimizing general liability coverage for defects of workmanship explains the result in a number of "care, custody or control" exclusion cases. In *Meiser v. Aetna Casualty & Surety Co.,* 8 Wis.2d 233, 239, 98 N.W.2d 919, 923 (1959) the court held that a plastering subcontractor who damaged windows while removing plaster which had been splattered on them did not have care, custody or control of the windows. The court said, in part, "Respondent's removal of the plaster on the windows was a matter of cleaning up, which cannot be considered an essential part of the plastering operation."

■ The distinction between handling of or possessory relationship with property normal to the performance of an insured's ordinary activity and such handling or possession of property merely incidental in the course of a particular job tends to track the distinction between a guaranty of workmanship and coverage of general liability.

■ In the instant case the core of Burns' workmanship is to provide a trustworthy and capable watchman to care for the premises and their contents. If the "care, custody or control" exclusion does not apply to such contents, the general liability insurer would bear the burden of guaranteeing such workmanship. We think that general principles support exclusion in this case.

The judgment appealed from is affirmed.