ROLETTE COUNTY, a public body corporate and legal political subdivision and LeRoy Ouelette, Plaintiffs,

v.

WESTERN CASUALTY & SURETY COMPANY, Defendant.

Civ. No. A2–76–42.

United States District Court,
D. North Dakota,
Northeastern Division.

June 13, 1978.

Kermit E. Bye, Vogel, Brantner, Kelly, Knutson, Weir & Bye, Fargo, N. D., for plaintiffs.

Patrick J. Maddock, Degnan, McElroy, Lamb, Camrud, Maddock & Olson, Grand Forks, N. D., for defendant.

## MEMORANDUM OF DECISION AND ORDER

BENSON, Chief Judge.

In this declaratory judgment action plaintiffs seek to recover, on the basis of a policy of comprehensive general liability insurance issued to plaintiff Rolette County by defendant Western Casualty and Surety Company (Western), the attorney's fees and expenses incurred in defending a civil action brought against plaintiff LeRoy Ouelette[1] by Richard and Mary Ann Guzman. In addition, plaintiffs seek to recover punitive damages on the basis of Western's alleged bad faith in failing to accept the defense of the action against LeRoy Ouelette, and reasonable attorney's fees, costs and expenses in bringing the present action.

The parties have entered into a stipulation of facts and other matters, and have submitted the case for the court's decision upon the stipulation and briefs.

The issues before the court are: (1) whether Western had a duty under the terms of the liability policy to defend the Guzmans' action against LeRoy Ouelette; (2) whether the notice to Western of the claims asserted by the Guzmans against LeRoy Ouelette was unreasonably delayed and whether the delay was prejudicial to Western; (3) whether Rolette County is a proper party in this action; (4) whether plaintiffs may recover punitive damages in this action; and (5) whether plaintiffs may recover attorney's fees and expenses incurred in bringing the present action.

### I. The Duty to Defend

A liability insurer's duty to defend its insured is measured by the terms of the policy and the complaint against the insured. If the claimant seeks recovery on the basis of a risk which is covered by the policy, the insurer has a duty to defend. *Kyllo v. Northland Chemical Co.,* 209 N.W.2d 629, 634 (N.D.1973). When multiple claims are asserted in the complaint against the insured, the insurer has a duty to accept the defense of the entire lawsuit as long as one of the claims is within the policy's coverage. *Babcock & Wilcox Co. v. Parsons Corp.,* 430 F.2d 531, 537 (8th Cir.

1. There is an indication in the file that the correct spelling of this plaintiff's surname is "Ouellette." However, since the parties have continued to use the incorrect spelling and have not moved to amend it, the court will utilize the spelling of his name that appears in the caption.

1970); *Lee v. Aetna Casualty and Surety Co.,* 178 F.2d 750 (2nd Cir. 1949). If the complaint is so ambiguous that there is doubt as to whether the insurer has a duty to defend, the doubt is resolved in favor of the insured. *Kyllo v. Northland Chemical Co.,* 209 N.W.2d at 634. *See also Babcock & Wilcox Co. v. Parsons Corp.,* 430 F.2d at 537.

■ When the insured establishes that his insurer had a duty to defend the action against him, the attorney's fees incurred by the insured in defending that action may be awarded as contract damages. *Western Casualty and Surety Co. v. Polar Panel Co.,* 457 F.2d 957, 961 (8th Cir. 1972), *quoting Rent-A-Scooter v. Universal Underwriters Ins. Co.,* 285 Minn. 264, 173 N.W.2d 9, 11–12 (1969).

## II. Terms of the Insurance Policy

Western issued a policy of general liability insurance to Rolette County, North Dakota, for the period from July 1, 1971 through July 19, 1974. Officials of the county were included as insureds under the policy.

The coverage provision of the policy states:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
>
> A.  bodily injury or
>
> B.  property damage
>
> to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company

shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

"Bodily injury" is defined in the policy as "bodily injury, sickness or disease sustained by any person." "Property damage" is defined as "injury to or destruction of tangible property." "Damages" is defined as including "damages for death and for care and loss of services resulting from bodily injury and damages for loss of use of property resulting from property damage." "Occurrence" is defined as "an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

Among the exclusions from coverage is the following:

> This insurance does not apply:
>
> \*     \*     \*     \*     \*     \*
>
> (h) to property damage to
>
> \*     \*     \*     \*     \*     \*
>
> (3) property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control;  .   .   .

## III. The Complaint Against LeRoy Ouelette

Richard and Mary Ann Guzman commenced an action in this court, Civil No. 4826, on May 4, 1973, against LeRoy Ouelette and others.[2] In their amended complaint,[3] filed on October 16, 1973, the Guzmans alleged that on March 5, 1973, LeRoy Ouelette, who was at that time the Sheriff of Rolette County, seized their mobile home and automobile pursuant to a warrant of attachment obtained in a state court by one of the Guzmans' creditors.

---

2.  For the disposition of the *Guzman* action, *see Guzman v. Western State Bank,* 381 F.Supp. 1262 (N.D.1974), *rev'd,* 516 F.2d 125 (8th Cir. 1975), *appeal after remand,* 540 F.2d 948 (8th Cir. 1976).

3.  Although the allegations and the type of relief sought in the original complaint were somewhat different from the amended complaint, none of these differences are pertinent to the issue of Western's duty to defend.

They further alleged that the North Dakota statute allowing ex parte prejudgment attachment of a debtor's property was unconstitutional, and that the actions of the defendants in procuring the writ of attachment and in seizing the property violated their constitutional rights, constituted an abuse of legal process, and resulted in an invasion of their privacy.

The amended complaint contained the following allegations of damages:

### XIII

While in the process of unlawfully seizing said property, the Defendants, acting in concert, including Bill Johnson d/b/a Bill's Mobile Home, carelessly and negligently damaged said property and Plaintiffs have been deprived of its use since March 5, 1973.[4]

### XIV

That as a direct and proximate result of said acts of the Defendants and all of them, said acts being in deprivation of the constitutional rights of the Plaintiffs, the Plaintiffs were embarrassed, humiliated, suffered great mental anguish and emotional distress and suffered damage to their reputation in the community.

### IV. Additional Findings of Fact; Conclusions of Law and Rationale

The court finds the liability policy in question was in effect on March 5, 1973, the date of the attachment of the Guzmans' property, and further finds that LeRoy Ouelette is an insured under the policy.

The court has jurisdiction over the subject matter and parties to this action.

Plaintiffs contend the allegations in the Guzmans' complaint support a duty to defend on the part of Western under both the property damage and bodily injury coverages of the policy. They contend Western had a duty to defend on the basis of the policy's property damage coverage arising from the allegation in the Guzmans' complaint that their property was negligently and carelessly damaged while it was being seized pursuant to the warrant of attachment.

The Guzmans' claim of damages to their property appears to fall squarely within the policy's coverage provision. However, Western argues that coverage is withheld by the policy's "care, custody and control" exclusion.

Once the insured has proved that a claim is potentially within a risk covered by the policy, the burden is on the insurer to show that coverage is excluded by the terms of the policy. *See Lovas v. St. Paul Insurance Cos.*, 240 N.W.2d 53, 62 (N.D. 1976).

An exclusion for damage to property in the "care, custody or control" of the insured envisions possessory control over the property, not proprietary control. *Ohio Casualty Ins. Co. v. Terrace Enterprises, Inc.*, Minn., 260 N.W.2d 450, 453 (1977). The determination whether the exclusion applies depends upon the circumstances of the particular case, and generally will turn on whether the property damaged is under the insured's supervision and is directly related to the activity in which the insured is engaged, or whether the property is only incidentally related to that activity. *Id.* at 453. It is usually held that the insured must have had more than "temporary access" to or "limited possession" of the damaged property, but exclusive control exercised over the property for a short period of time may be sufficient to bring the exclusion into operation. *Stewart Warner Corp. v. Burns International Security Services, Inc.*, 527 F.2d 1025, 1029–30 (7th Cir. 1975); *Monari v. Surfside Boat Club, Inc.*, 469 F.2d 9 (2d Cir. 1972). Further, there is "no requirement that the insured's relationship to property involve intimate physical handling of each item of such property." *Stewart Warner Corp. v. Burns International Security Services, Inc.*, 527 F.2d at 1029.

Plaintiffs in this case argue that the Guzmans' complaint does not clearly allege that the property was seized or damaged while it was in the care, custody or control of Sheriff Ouelette, relying upon the Guz-

---

**4.** Bill Johnson, a codefendant in the action, was the seller of the mobile home and assignor of the retail installment contract and security agreement to the creditor who procured the warrant of attachment.

mans' allegation that "Defendants, acting in concert, including Bill Johnson, d/b/a Bill's Mobile Homes, carelessly and negligently damaged said property . . . ." They argue that this allegation is ambiguous and implies that the property was under the care, custody and control of Bill Johnson while it was being seized.

Plaintiffs apparently seek by this argument to implement the rule that ambiguities in the claimant's complaint are to be resolved in favor of a duty to defend. However, the court finds the Guzmans' complaint, read as a whole, does clearly and unambiguously allege that Sheriff Ouelette, whether or not he was physically assisted by others,[5] was the person who seized their property.

The North Dakota attachment statute attacked by the Guzmans in their action[6] provided that a levy upon a warrant of attachment must be made:

> 3. Upon personal property capable of manual delivery, including bonds, promissory notes, or other instruments for the payment of money, *by taking the same into the Sheriff's actual custody.* He thereupon without delay must deliver a copy of the warrant to the person from whose custody such property is taken.

N.D.Cent.Code § 32–08–10 (repealed 1977) (emphasis added).

The Guzmans did not allege that the seizure of their property failed to comport with the requirements of the attachment statute; rather, they alleged that the statute and the attachment pursuant to the statute were unconstitutional. The clear import of the complaint, read together with the law in existence at the time of the attachment, is that any handling of the property by persons other than Sheriff Ouelette was for the purpose of aiding Ouelette in obtaining custody of the property and was done under his control. Therefore, the court finds that LeRoy Ouelette had custody of the property and was exercising exclusive control over it when it was damaged.[7]

The court concludes that the Guzmans' property damage claim falls within the policy's exclusion of coverage for damage to property in the care, custody and control of the insured, and Western had no duty to defend on the basis of that claim.

█ Plaintiffs also seek to establish a duty to defend on the basis of the policy's coverage for bodily injury, which is defined to include "sickness and disease," relying upon the Guzmans' allegation that as a result of the defendants' acts in deprivation of their constitutional rights, they were "embarrassed, humiliated, [and] suffered great mental anguish and emotional distress . . . ."

A condition precedent to finding Western had a duty to defend on this or any other basis is an allegation in the complaint of damages caused by an "occurrence." As noted previously, "occurrence" is defined in

---

**5.** Plaintiffs have overemphasized, out of context, the amended complaint's allegation of Bill Johnson's role in the seizure of their property. The allegation in question is the first mention in the complaint of any misconduct on the part of Bill Johnson. It is preceded by allegations that the defendant creditor procured the warrant of attachment and that Sheriff Ouelette, acting at the direction of and in concert with the creditor, seized the property, all of which acts were unlawful. When read in context, the allegation that "the Defendants, acting in concert, including Bill Johnson d/b/a Bill's Mobile Homes, carelessly and negligently damaged said property . . . ." is merely an allegation that Bill Johnson was a party responsible for the property damage suffered by the Guzmans, rather than an allegation that he had custody and control of the property while it was being seized.

**6.** The statute in question, N.D.Cent.Code Ch. 32–08, was held unconstitutional by the Court of Appeals for the Eighth Circuit, *Guzman v. Western State Bank,* 516 F.2d at 133, and was subsequently repealed by the North Dakota Legislature. 1977 N.D.Sess.Laws. Ch. 301, § 25.

**7.** The parties have stipulated that Western was first notified of the Guzmans' claim on December 16, 1974, over a year after Ouelette had interposed his answer to the amended complaint. In that answer Ouelette admitted that he took the Guzmans' property into his possession pursuant to the warrant of attachment. He further alleged that the property was still in his possession.

the policy as "an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

This standard definition limits coverage to "fortuitous losses," that is, damages arising from "mistake or carelessness" on the part of the insured rather than from "intentional or reckless acts." [8] *Bituminous Casualty Corp.*, 307 Minn. 72, 240 N.W.2d 310, 313 (1976). *See also Ohio Casualty Ins. Co. v. Terrace Enterprises, Inc.*, 260 N.W.2d at 452.

The acts referred to by the Guzmans as being in deprivation of their constitutional rights were the application for the warrant of attachment and levy upon the warrant without prior notice or hearing. These acts were clearly intentional, not accidental. There is no indication in the complaint that the failure to give prior notice was the result of negligence or carelessness on the part of any of the defendants.

Thus, the court finds the claim relied upon by plaintiffs as the basis for a duty to defend under the policy's bodily injury coverage did not arise from an "occurrence" as required by the terms of the policy.

Even if the existence of an "occurrence" were assumed, the court finds the policy would provide no coverage for the claim in question because the type of damage alleged does not constitute "bodily injury."

▮ In arguing that the damages alleged by the Guzmans are covered, plaintiffs seem to be equating the policy definition of bodily injury with the broader term "personal injury." The use of the term "bodily injury" in the policy limits the harm covered by the policy to *physical* injury, sickness, or disease and does not include nonphysical harm to the person. *United States Fidelity & Guaranty Co. v. Shrigley*, 26 F.Supp. 625, 628 (W.D.Ark.1939). In tort actions alleging mental suffering, the courts have consistently distinguished mental and emotional harm from physical harm, whether or not they recognize mental suffering as a separate cause of action. *See Piorkowski v.*

*Liberty Mutual Ins. Co.*, 68 Wis.2d 445, 228 N.W.2d 695 (1975); *First National Bank of Jacksonville v. Bragdon*, 84 S.D. 89, 167 N.W.2d 381 (1969); *State Farm Mutual Auto. Ins. Co. v. Village of Isle*, 265 Minn. 360, 122 N.W.2d 36 (1963); *Stewart v. Rudner*, 349 Mich. 459, 84 N.W.2d 816 (1957); *Curnett v. Wolf*, 244 Iowa 683, 57 N.W.2d 915 (1953); *LaSalle Extension University v. Fogarty*, 126 Neb. 457, 253 N.W. 424 (1934).

Although the Guzmans' allegations constitute claims for "injury to the person," no "bodily injury" was alleged in the complaint. Therefore, the court concludes Western had no duty to defend on the basis of the policy provisions for bodily injury coverage.

Since Western had no duty to defend the action against LeRoy Ouelette, it is unnecessary for the court to reach the other issues in the case.

IT IS ORDERED that judgment be entered dismissing plaintiffs' complaint and cause of action.

---

**8.** The Guzmans' claim that their property was negligently and carelessly damaged while it

was being seized, discussed previously, was based on an "occurrence."