**ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a Minnesota corporation, Plaintiff,**

v.

**CAMPBELL COUNTY SCHOOL DISTRICT NO. 1, Defendant.**

**No. C85–0002–B.**

United States District Court, D. Wyoming.

June 26, 1985.

Dan B. Riggs, Lonabaugh & Riggs, Sheridan, Wyo., for plaintiff.

Dan R. Price, II, Morgan, Brorby, Price & Roberts, Gillette, Wyo., for defendant.

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

BRIMMER, District Judge.

The above entitled matter came before the Court pursuant to cross motions for summary judgment. The Court, having reviewed the pleadings and the evidence offered, and being fully advised in the premises, FINDS and ORDERS as follows:

This is a declaratory judgment action initiated by plaintiff St. Paul Fire and Marine Insurance Company (St. Paul) seeking a declaration by the Court that it has no duty to defend or pay out on a case involving a civil rights suit against the insured, Campbell County School District No. 1 (School District). Both sides ask for summary judgment on the issue of liability and duty to defend regarding the civil rights suit instituted against the School District by Judy Worth.

Judy Worth, a teacher for the School District, while sponsor of the school newspaper, became entangled in a battle over publication of a certain satirical cartoon. When the school principal refused to let the cartoon be published, Ms. Worth called in outside help, including the American Civil Liberties Union (ACLU). Ms. Worth contends that because of her activities she was demoted, harassed, and in general subjected to emotional suffering. Ms. Worth sued the School District for violation of her First Amendment rights, and seeks damages for, *inter alia*, emotional suffering. The School District informed plaintiff St. Paul that it expected the insurance company to defend and cover this lawsuit, and St. Paul now seeks a declaration from this Court that the policies in question do not invoke either a duty to defend or cover any losses arising from the Worth lawsuit.

Three separate policies are involved in this matter, and although they are partially interrelated, the Court will deal with them one at a time. The first policy, a Comprehensive General Liability Insurance Policy, effective from October 13, 1983 through July 1, 1984, provides in part that the company will pay for all damages because of

"bodily injury … caused by an occurrence, "and the company shall have the right and the duty to defend any (such) suit...." The policy goes on to define "bodily injury" as "bodily injury, sickness or disease sustained by any person which occurs during the policy period...." Finally, the policy defines "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

■ Given the policy language, the crux of the matter is whether or not the events causing Ms. Worth's alleged emotional suffering constitute an occurrence. The alleged events in question include such matters as harassment by her superiors for calling in the ACLU, failure to be reinstated as journalism sponsor, etc. None of these events can be construed as unintentional, and the School District admits as much. However, the District contends that since the outcome of the events, namely Ms. Worth's emotional distress, was unintentional, the events should be considered an occurrence.

There is no clear Wyoming law on this question. Although in Wyoming an "insurer is obligated to defend if there is *potentially* a case under the complaint within the coverage of the policy," "potential" has not been given an expansive reading. *Boston Insurance Company v. Maddux Well Service*, 459 P.2d 777, 779 (Wyo.1967). In *Action Ads, Inc. v. Great American Ins. Co.*, 685 P.2d 42 (Wyo.1984), the Wyoming Supreme Court recently declined to give an expansive reading to a similar insurance clause defining occurrence. Although the injury itself could be construed within the clause, because the employee in question only sued the insured for breach of contract, the Court found that the insurance company had no duty to defend or cover the losses. The Court acknowledged that this was "a narrow reading of the liability-coverage clause", but reasoned that an "occurrence" referred to tortious conduct, and that "Action Ads' potential liability in this case stemmed not from its own *negligent*

behavior, but from a contractual obligation." *Id.* at 45 (emphasis added).

The Court is faced with a similar situation. The School District's potential liability also stems not from negligence, but from intentional acts on the part of its agents. St. Paul argues that intentional acts do not fit within the policy definition of occurrence, which speaks in terms of an accident. The Court agrees. In construing a near identical clause, the District Court for the District of North Dakota held:

> This standard definition limits coverage to "fortuitous losses", that is damages arising from "mistake or carelessness" on the part of insured rather than from "intentional or reckless acts". *Rolette County v. Western Cas & Sur. Co.*, 452 F.Supp. 125, 130 (D.N.D.1978).

Since it is clear that any emotional damages to Ms. Worth were caused by intentional acts, and were not the result of an accident, the Court must conclude that the incidents in question were not an "occurrence" as defined by the policy. *See also Pendergraft v. Commercial Standard Fire & Marine Co.*, 342 F.2d 427, 429 (10th Cir.1965); and *Service Welding & Mach. Co. v. Michigan Mutual Liability Co.*, 311 F.2d 612, 617 (6th Cir.1962).

■ Moreover, even if the existence of an occurrence were assumed, the type of damage alleged, i.e. emotional suffering, does not constitute "bodily injury". In *Bituminous Fire & Marine Ins. Co. v. Izzy Rosen's, Inc.* 493 F.2d 257, 261 (6th Cir. 1974), the court concluded, in discussing a policy obligation to pay for damages because of bodily injury, that "such a policy contemplates some injury to the body of a physical nature in order to come within the definition of 'bodily injury'". *See also Rolette County v. Western Cas. & Sur. Co.*, 452 F.Supp. 125 (D.N.D.1978), holding that mental anguish and emotional distress caused by an unconstitutional search do not constitute "bodily injury". Since Ms. Worth is not suing for a physical injury or disease, the Court concludes that plaintiff insurance company has no duty to defend

or cover any losses under the Comprehensive General Liability Policy.

■ The second policy is one for Employer's Liability. Under the pertinent language, St. Paul agreed:

To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury by accident or disease ... (To) defend ... any suit against the insured alleging such injury and seeking damages on account thereof ...

(And that) this policy applies only to injury (1) by accident occurring during the policy period, or (2) by disease caused or aggravated by exposure of which the last day of the last exposure, in the employment of the insured, to conditions causing the disease occurs during the policy period.

As the Court has already noted, from her complaint it is clear that Ms. Worth is not seeking damages for a bodily injury caused by accident. However, the School District also contends that Ms. Worth's emotional distress constitutes bodily injury by disease, relying on her psychiatrist's statement that she is suffering from a "depressive neurosis". Even if the Court could be convinced that a neurosis with no accompanying physical changes constitutes a bodily injury, St. Paul would still have no duty to defend or provide coverage. The Wyoming Supreme Court has held that "where terms of an insurance policy are clear and unambiguous, they will be enforced the same as are the terms of other contracts." *Alm v. Hartford Fire Insurance Co.*, 369 P.2d 216, 217 (Wyo.1962).

The Court concludes that the limiting language of the policy is quite clear. "This policy applies only to injury ... by disease caused or aggravated by exposure of which the last day of the last exposure, in the employment of the insured, to conditions causing the disease *occurs during the policy period.*" (Emphasis added). The policy in question terminated on July 1, 1984. Ms. Worth's problems stemming from the cartoon have been a continuous matter from December of 1983 running through at least August 31, 1984 when she filed her complaint and asked this Court to enjoin certain behavior on the part of the School District, to reinstate her as a journalism sponsor, and to award her damages for continuing loss of income, damage to career and reputation, and emotional suffering. Therefore, by its very terms the Employer's Liability Policy does not provide coverage because Ms. Worth's last exposure to the conditions causing her neurosis may not have occurred yet, but certainly occurred after July 1, 1984.

■ The final policy is a Voluntary Compensation Endorsement policy. Again, following the *Alm* court's admonition to apply the clear and unambiguous language of the policy the Court concludes that St. Paul has no duty to defend or cover losses, because Ms. Worth sued the School District in this Court. The Voluntary Compensation Endorsement policy is quite clear that "if any person entitled to payment under Coverage 'C' (this policy) ... shall commence any proceedings at law ... seeking damages from the insured or the company on account of such injury, the company's liability under Coverage 'C' with respect to such injury is thereupon terminated." Thus, since Ms. Worth chose to sue instead of seeking a worker's compensation-type payment under this policy, the Voluntary Compensation Endorsement does not provide coverage.

The Court concludes that plaintiff St. Paul is entitled to a declaratory judgment that it need not pay for any damages suffered by Ms. Worth under any of the three policies discussed in this Order. Furthermore, the Court concludes that St. Paul was correct in assuming that, just as the Great American Insurance Company had no duty to defend for breach of contract, it had no duty to defend for any "potential" liability arising from an intentional, constitutional tort. *Action Ads, Inc. v. Great American Ins. Co.*, 685 P.2d 42 (Wyo. 1984). Therefore, it is

ORDERED and DECLARED that the rights of the parties are as follows:

1. Plaintiff has no duty to defend or indemnify defendant for any liability incurred by it as a result of the civil rights action initiated by Judy Worth, under either the General Liability Insurance Policy, the Employer's Liability Policy, or the Voluntary Compensation Endorsement Policy.

2. Defendant has no right to collect under said policies for intentional, non-bodily damages caused to Judy Worth by its agents. It is further

ORDERED that plaintiff St. Paul Fire and Marine Insurance Company's motion for summary judgment be, and the same hereby is granted. It is further

ORDERED that defendant Campbell County School District No. 1's motion for summary judgment be, and the same hereby is, denied, and that this matter be, and the same hereby is, dismissed with prejudice. It is further

ORDERED that plaintiff recover of the defendant its costs of action.