**WEST AMERICAN INSURANCE COMPANY, et al., Plaintiffs,**

v.

**BANK OF ISLE OF WIGHT, et al., Defendants.**

Civ. A. No. 87–0292–R.

United States District Court, E.D. Virginia, Richmond Division.

Nov. 24, 1987.

Barry A. Hackney, Michael P. Falzone, Hirschler, Fleischer, Weinberg, Cox & Allen, Richmond, Va., for plaintiffs.

Reid H. Ervin, Michael F. Bergan, Harlan, Knight, Dudley & Pincus, Norfolk, Va., for defendants.

### MEMORANDUM OPINION

ELLIS, District Judge.

*Introduction*

This case raises questions under Virginia law of insurance coverage and of certification of state law questions to the Virginia Supreme Court. Procedurally these questions come before the Court on plaintiffs' motions for summary judgment, defendants' cross motions for summary judgment,

and defendants' motions for certification of questions of state law. This memorandum opinion addresses all motions and concludes that no questions merit certification, that summary judgment for West American on Count I is appropriate, and that summary judgment for Ohio Casualty on Count II is denied.

Plaintiffs, West American Insurance Company (West American) and Ohio Casualty Insurance Company (Ohio Casualty), are Ohio corporations whose principal places of business are in Hamilton, Ohio. Defendant Bank of Isle of Wight (the "Bank"), is a Virginia corporation whose principal place of business is in Smithfield, Virginia. The individual named defendants, officers and directors of the Bank, are each citizens of the Commonwealth of Virginia. For convenience, the individual defendants and the Bank of Isle of Wight are referred to throughout as "the Bank."

Jurisdiction is validly premised upon 28 U.S.C. § 1332 and 28 U.S.C. § 2201.

## I. BACKGROUND

### A. *Factual History*

In July 1986, Eberwine filed an action against the Bank in the Circuit Court of the Isle of Wight County (the "Eberwine action") asserting that the Bank intentionally and wrongfully terminated his employment contract. It also alleges negligence and breach of fidiciary duty. Eberwine's alleged damages include lost wages and benefits, injury to reputation, and emotional distress.

The Bank carries a liability insurance policy issued by West American and a bond issued by Ohio Casualty. The insurance policy provides that West American "will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence." The policy also provides that West American

"shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage."

The Ohio Casualty bond indemnifies the Bank for the cost of defending a director or officer of the Bank "where such director or officer was made a party by reason of his position with the Bank ... [but] only if he is adjudged not to have been guilty of negligence or misconduct in the performance of his duties." Pursuant to the policy provisions and the bond, the Bank called upon West American and Ohio Casualty to defend and indemnify it with respect to the claims asserted in the Eberwine action. Both declined and denied coverage, citing various policy provisions. Seeking to sustain this denial of coverage, West American and Ohio Casualty brought this declaratory judgment action.

### B. *Procedural Background*

Plaintiffs filed this action on April 1, 1987. In Count I, West American seeks a declaration that it has no duty to defend the Bank in the Eberwine action. In Count II, Ohio Casualty seeks a declaration that it has no duty to indemnify. In its answer, the Bank asserts that plaintiffs have been dilatory and are guilty of laches. In addition, the Bank raises a counterclaim against West American, alleging that the insurance company breached its implied covenant of good faith and fair dealing.[1]

Thereafter, West American filed a motion for summary judgment on Count I asserting four grounds for the denial of coverage. First, with regard to the provision limiting coverage to "bodily injury ... caused by an occurrence," plaintiffs contend the Eberwine action involves no "bodily injury." Second, with regard to the same provision, plaintiffs claim that the Eberwine action does not involve an "occurrence" within the meaning of the policy. Third, plaintiffs assert that the policy pro-

---

1. The Bank's counterclaim is dismissed and not discussed here because, as this opinion concludes, West American has no duty of coverage or defense in this instance. It follows, therefore, that there can be no breach of an implied covenant of good faith and fair dealing.

vision excluding claims of "bodily injury to any employee of the insured arising out of and in the course of his employment" applies to exclude from coverage any claims asserted in the Eberwine action. Fourth, plaintiffs contend that defendants failed to provide West American with adequately prompt notice of the Eberwine action thereby justifying denial of coverage. To sustain denial of coverage, West American need only prevail on one of the grounds.

Ohio Casualty filed a motion for summary judgment as to Count II, asserting that notice of the Eberwine action was not received until 30 days after the action was instituted and therefore, under the bond, there is no duty to indemnify.

Defendants filed a cross-motion for summary judgment against West American on Count I, or alternatively, defendants seek to have two issues relating to Count I certified to the Supreme Court of Virginia under Rule 5:42(a) of the Rules of the Supreme Court of Virginia.

## II. MOTION TO CERTIFY

■ This declaratory judgment action presents no federal questions. Since this action is before the Court pursuant to its diversity jurisdiction, state law applies. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Because this insurance policy was issued and delivered in Virginia and all relevant acts and omissions occurred in Virginia, Virginia law applies. *Maryland Casualty Co. v. Burley*, 345 F.2d 138 (4th Cir.1965).

Defendants assert that this declaratory judgment action presents two questions of Virginia law on which there is no controlling Virginia precedent:

(1) whether emotional distress is a "bodily injury" as defined in the insurance policy and, if so, whether such inju-

ry constitutes an "occurrence" as defined in the policy; and

(2) whether the "employee exclusion" of the insurance policy excludes allegations of negligent termination by the Bank and individual defendant directors from coverage under the policy.

Because there exists no controlling Virginia precedent, defendants urge that this Court certify these questions to the Virginia Supreme Court pursuant to Rule 5:42 of the Rules of the Supreme Court of Virginia.

■ Rule 5:42 is new and most welcome.[2] It is, in the words of Judge Butzner, "the best solution to the federal courts' difficulty in predicting state law." Butzner & Kelly, *Certification: Assuring the Primacy of State Law in the Fourth Circuit*, 44 W & L L.Rev. 449 (1985). Rule 5:42 was promulgated only after a thorough review of the practices in some forty other states that have certification statutes. In all those states, the decision whether to certify is, as it must be, within the discretion of the certifying court. The guidance to courts with this discretion is simply that no question may be certified unless (i) it is *determinative* of the cause, and (ii) unless there is no controlling Virginia Supreme Court precedent. Issues meeting these criteria may be certified. Whether to do so in the circumstances is within the sound discretion of the certifying court. *See Lehman Bros. v. Schein*, 416 U.S. 386, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974); *see also Barnes v. Atlantic & Pacific Life Insurance Co.*, 514 F.2d 704 (5th Cir.1975).

■ The threshold issue, then, is whether the questions presented are "determinative," as that term is used in Rule 5:42. Plaintiffs assert that the questions are not determinative and cite as controlling authority the Fourth Circuit's opinion in *Boyter v. Commissioner*, 668 F.2d 1382 (4th

**2.** Rule 5:42 provides, in pertinent part, that: The Supreme Court may in its discretion answer questions of law certified to it by ... a United States district court.... Such answer may be furnished, ... if a question of Virginia law is determinative in any proceeding pending before the certifying court and it appears there is no controlling precedent on point in the decisions of the Supreme Court or Court of Appeals of Virginia.

*See also Clay v. Sun Ins. Office Ltd.*, 363 U.S. 207, 212, 80 S.Ct. 1222, 1226, 4 L.Ed.2d 1170 (1960) (Frankfurter, J.) (commending the Florida Legislature's "rare foresight" in adopting certification statute).

Cir.1981). There, two taxpayers, husband and wife, obtained a Haitian divorce because their combined federal income tax liability would be lower if they reported their respective incomes as unmarried individuals. The Commissioner, however, ignored this "divorce" and determined a deficiency in income taxes for each of the taxpayers. On appeal, the tax court sustained the Commissioner's determination by concluding that Maryland (the residence of the taxpayers) would not recognize the foreign divorces as valid. On appeal from the tax court, the Fourth Circuit found that Maryland law on the point was ambiguous and that the Fourth Circuit "would ordinarily be disposed to invoke [Maryland's] certification procedure." *Id.* at 1385. In this instance, however, the Court recognized that, whatever the validity of the divorce under Maryland law, the Commissioner could and would still argue that the taxpayers must be treated as husband and wife under the federal "sham transaction doctrine." Therefore, further proceedings in a federal tribunal would have been necessary even if a Maryland court ruled the divorce valid. A subsequent federal ruling might have rendered the certification to the Maryland court "a futile academic exercise with respect to final disposition of the case." *Id.* at 1385. Accordingly, the Fourth Circuit held that where a question of federal law is present and undecided, the decision of which may be wholly dispositive of the case, "discretion ought not to be exercised to certify a question of state law." *Id.* at 1386.

*Boyter* is inapposite. No federal question exists here that might make certification to the Virginia Supreme Court a "futile, academic exercise." Both insurance coverage questions are novel, dispositive State law questions. As such, they are eligible for certification. The question then becomes whether the totality of cir-

cumstances warrant the exercise of the court's discretion to certify.

Prudent exercise of this discretion is important. All certifying courts should be keenly aware of their obligation not to abdicate their responsibility to decide issues properly before them. They should also be keenly aware that certification involves an imposition on the time and resources of the Supreme Court of Virginia and an increase in the expenditure of time and resources by the parties for, if certification is ordered, they must submit briefs and may be requested to make oral argument.[3] All of this means delay in disposition, increased costs to the parties, and increased costs in judicial resources. These factors strongly suggest that the discretion to certify should be cautiously exercised. In appropriate cases it is the "best solution", but every case of an issue yet unresolved by the Supreme Court of Virginia is not an *appropriate* case.

In this case, the Court is persuaded that certification is not warranted. Here the factors that bear on the exercise of the certification discretion simply are not persuasive. While the precise issue of the interpretation of the term "bodily injury" as used in policies of insurance has not been resolved definitively by the Supreme Court of Virginia, there is a wealth of authority on this point from other jurisdictions. Even so, however, this alone would not block certification were it not for the fact that the great bulk of this authority points in one direction; it holds that "bodily injury" does not encompass emotional distress, but is limited to physical injury.[4] Indeed, the West American policy definition itself also points powerfully in this direction.[5] It is neither surprising nor irrelevant that the Eastern District of Virginia has already decided this issue in a fashion that accords with the well-established majority view. Discretionary certification is inappropriate where, as here, there is

3. See e.g., Va.Sup.Ct.Rule 5:42(g) (costs of certification); 5:42(h) (written briefs required); 5:42(e) (oral argument may be permitted).

4. See *American & Foreign Insurance Co. v. Church Schools,* 645 F.Supp. 628 (E.D.Va.1986); *Rolette County v. Western Casualty & Surety Co.,* 452 F.Supp. 125 (D.N.D.1978); *see also St. Paul Fire & Marine Ins. Co. v. Campbell County School Dist.,* 612 F.Supp. 285 (D.N.Y.1985).

5. The policy defines "bodily injury" as "bodily injury, sickness, or disease ... which occurs during the policy period." For the policy definition of "occurrence," *see infra* p. 765.

persuasive authority available from other jurisdictions on the unresolved, dispositive state issue.

In sum, all of the pertinent factors militate against certification. Only. the most difficult and most novel issues should be certified.[6] This is neither. Accordingly, this Court declines certification.

## III. WEST AMERICAN'S MOTION FOR SUMMARY JUDGMENT ON COUNT I

### A. *Bodily Injury*

 The Bank contends that West American must defend the Bank because Eberwine's claim for emotional distress is a "bodily injury" within the scope of the insurance policy. A recent decision of this Court's Richmond Division, however, rejected this position in *American & Foreign Insurance Co. v. Church Schools*, 645 F.Supp. 628 (E.D.Va.1986) (Merhige, J.). There, the court stated that although Virignia courts have not interpreted the term "bodily injury,"

> courts that have interpreted this language have determined that it limits policy coverage to physical injury to the body and does not include claims for purely nonphysical or emotional harm.

\* \* \*

> In giving the "bodily injury" coverage its plain meaning, it simply does not cover ... claim[s] for purely emotional injury.

*Id.* at 632 (citations omitted). This construction of "bodily injury" comports with the prevailing rule in other jurisdictions. *See, e.g., Rolette County v. Western Casualty & Surety Co.*, 452 F.Supp. 125, 130 (D.N.D.1978); *E–Z Loader Boot Trailers, Inc. v. Travelers Indemnity Co.*, 106 Wash.2d 901, 726 P.2d 439 (1986). For example, in *Rolette*, the court held that the use of the term "bodily injury" in an insurance policy "limits the harm covered by the policy to *physical* injury, sickness or disease and does not include nonphysical harm to the person." *Rolette*, 452 F.Supp. at 130 (emphasis in original). Therefore, the insurer was under no duty to defend where damages for emotional distress were sought. *Id.* There exists no reason to depart from the rule set forth in *Rolette* and followed in *Church Schools;* accordingly, this Court holds that "bodily injury" encompasses to actual physical harm caused by negligence, but not emotional distress caused by wrongful job termination.

This ruling, by itself, is sufficient to dispose of the coverage issue in plaintiffs' favor. In the interests of judicial economy, however, the Court deems it appropriate to address the other issues in the event of an appeal.

### B. *Occurrence*

 Even if "bodily injury" included emotional distress, such injury must also arise from an "occurrence" in order to be covered under the policy. The policy defines occurrence as "an accident, including continuous or repeated exposure to conditions which result in bodily injury or property damage neither expected nor intended from the standpoint of the insured." Under such a provision, "allegations of intentional torts are not covered and impose no duty to defend." *Church Schools*, 645 F.Supp. at 633; *see also Travelers Indemnity Co. v. Obenshain*, 219 Va. 44, 47, 245 S.E.2d 247, 248 (1978). This standard definition of "occurrence" limits insurance coverage to "damages arising from 'mistake or carelessness' on the part of the insured rather than from 'intentional or reckless acts.'" *Rolette*, 452 F.Supp. at 130 (citing *Bituminous Casualty Corp. v. Bartlett*, 307 Minn. 72, 240 N.W.2d 310, 313 (1976)); *see Ohio Casualty Ins. Co. v. Terrace En-*

---

6. The significance of a question is also important. Questions with little significance beyond the immediate case are unlikely to merit certification. By contrast, novel, dispositive and difficult questions with wide impact are prime candidates for certification. *See School Board of the City of Norfolk v. United States Gypsum Co.*, 234 Va. 32, 360 S.E.2d 325 (1987) (whether the application of Va.Code App. § 8.01–250, which extends the statute of limitations for certain asbestos removal claims, is unconstitutional under Due Process clause) (certified by Judge Hoffman, U.S. Dist Ct. for E.D.Va., Norfolk Division).

*terprises, Inc.*, 260 N.W.2d 450, 453 (Minn. 1977); *see also St. Paul Fire & Marine Insurance v. Campbell County School*, 612 F.Supp. 285, 287 (D.Wyo.1985) ("emotional damages were caused by intentional acts ... [thus] the incidents in question were not an 'occurrence' "). Therefore, intentional infliction of emotional distress, even if characterized as a bodily injury, is not an occurrence within the meaning of the policy. *See generally* Annotation, *Liability Insurance: Assault as an Accident*, 72 A.L.R.3d 1090, 1103–04 (1976).

Eberwine's complaint, however, also alleges *negligent* behavior on the part of the Bank. Here, Eberwine's allegations of negligence do state a claim for an "occurrence" under the policy. *See Church Schools*, 645 F.Supp. at 633. Yet, because emotional distress is not a "bodily injury," the negligence claim still falls outside the scope of the policy. *Id.*

### C. *Employee Exclusion*

■ Again, assuming that emotional distress is a "bodily injury", such injury is excluded from coverage if it "arises out of" and "in the course of" employment.[7] Here, Eberwine's injuries quite plainly arose in the course of his employment and are thus excluded from coverage. Eberwine's claims relate directly to his activities as an employee of the Bank. Each of the events which gave rise to Eberwine's termination took place during the period of his employment and indeed, while he was performing his duties as an employee of the Bank. His claims, therefore, seek compensation for injuries inflicted "in the course of" his employment with the Bank.

### D. *Notice*

■ Finally, plaintiffs' contend that defendants failed to provide prompt notice of the alleged occurrence. The policy provides that "in the event of an occurrence, written notice ... shall be given by or for the insured to the Company or any of its authorized agents as soon as is practica-

ble." Eberwine was fired on December 30, 1985. He filed his motion for judgment against the Bank in the Circuit Court of the Isle of Wight County on July 25, 1986. The Bank was served with a copy of Eberwire's motion on July 28, 1986. The Bank then forwarded a copy of the motion to its local agent on July 29, 1986, who in turn forwarded notice to West American's claims manager on August 7. Although Eberwine was terminated in December 1985, the Bank did not then know, and could not have known, that Eberwine would bring an action against the Bank. Not until July 1986 did the bank actually receive notice, which it promptly forwarded to West American. Under these facts, the Bank gave notice "as soon as practicable." *See generally American Mutual Liability Ins. Co. v. State Farm Mutual Auto. Ins. Co.*, 293 F.Supp. 256 (W.D.Va.1968); *aff'd*, 411 F.2d 605 (4th Cir.1969) (notice given by insured three hours after he was sued, although 117 days after date of accident, was notice given "as soon as practicable").

## IV. OHIO CASUALTY'S MOTION FOR SUMMARY JUDGMENT ON COUNT II

Ohio Casualty contends that the notice the Bank provided to Ohio Casualty was untimely. The bond provides that notice must be given within 30 days of discovery of the loss.

As discussed above, the Bank received its copy of Eberwine's motion for judgment on July 28, 1986 and forwarded it to their local agent on the following day. On August 4, 1986, the local agent forwarded a copy of the motion for judgment to Dan Blanchard, claims manager for West American *and* Ohio Casualty. The letter of August 4 listed the identification number for the West American policy but omitted the number for the Ohio Casualty bond. Yet omission of the bond number is not fatal; Blanchard was the claims manager for both insurance companies, and hence the August 4 letter effectively apprised Ohio Casualty of the existence of the Eberwine

---

7. Although Eberwine is an officer of the Bank, he is still an "employee" within the meaning of the policy. *See Richard v. Hebert's Creamery*, *Inc.*, 415 So.2d 668, (La.App.1982) (executive officers are "employees" for purposes of insurance policy).

action. Therefore, notice was timely given and Ohio Casualty's motion for summary judgment on Count II is denied. Because the parties agree that Ohio Casualty's duty to indemnify has not yet arisen, no further disposition on Count II is presently appropriate.

The Clerk is directed to send copies of this Memorandum Opinion to counsel of record.