MARSON COAL COMPANY, INC.

*v.*

THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA

(No. 13452)

Decided October 29, 1974.

*Steptoe & Johnson, Herbert G. Underwood* for appellant.

*Herschel Rose and Duane Southern* for appellee.

HADEN, JUSTICE:

This is an appeal by the plaintiff below, Marson Coal Company, Inc., from the final decision of the Circuit Court of Randolph County in a declaratory judgment action brought by it to seek determination of liability coverage under a certain policy of aviation insurance issued by the appellee, The Insurance Company of the State of Pennsylvania. The circuit court's assailed judgment declared the non-availability of coverage to the coal company.

By a policy renewal dated March 5, 1972, the insurance company issued an Aviation Hull and Liability Policy to the coal company insuring it against specified hazards for the period from March 5, 1972 to March 5, 1973.

On April 18, 1972, the aircraft described by the policy collided with a high-tension wire owned by the Monongahela Power Company, which resulted in the death of the pilot, Harry C. Marson, III, and the sole passenger, William R. McCutcheon.

The insurance company denied coverage under the policy and the plaintiff, thereafter, instituted a declaratory judgment action. The case was tried to the court without a jury, and upon the trial court's findings of fact and conclusions of law, coverage under the policy was denied.

The primary issue arising upon the pleadings, discovery and evidence was whether, under the facts adduced, the policy afforded liability coverage to plaintiff at the time of the accident. An ancillary issue, involving the application of the "best evidence rule," also became highly significant in the determination of this action.

The pertinent portions of the insurance policy, which are of paramount significance, are as follows: *Item 8* of the "DECLARATIONS" provides:

> "When in flight the aircraft will be piloted only by Harry Marson, provided he is a private or commercial pilot properly certificated by the FAA having a minimum of 1900 logged flying hours including 200 hours on helicopters; or any private or commercial pilot with a helicopter rating properly certificated by the FAA having 500 logged helicopter flying hours."

That portion of the above-quoted provision, beginning with the words "Harry Marson" and ending with the close of the quote, was a typewritten addition to a standard form printed policy. Within the printed portions of

the policy, under "EXCLUSIONS," the following provision is found:

> "THIS POLICY DOES NOT APPLY AND NO COVERAGE IS AFFORDED:
>
> . . .
>
> "2. To any insured while the aircraft is in flight:
>
> . . .
>
> "(b) if piloted by a pilot not properly certificated and qualified under the current applicable Federal Air Regulations for the operation involved whether said pilot is designated in the Declarations or not; . . . ."

The trial court, based upon a finding that Harry Marson had 1,549 hours and 4 minutes logged flying time and 123 hours and 30 minutes logged helicopter flying time, concluded that the plaintiff failed to sustain its burden of establishing that Harry Marson "was properly certificated by the FAA and had the logged flying hours required by the typewritten declarations and printed exclusion of the policy." The trial court's finding was predicated upon the exclusion of certain "secondary" evidence offered during the trial purporting to supply evidence of flying time not recorded in the exhibited logs.

With reference to the above-quoted policy provisions, the trial court stated:

> "[I]f the conditions precedent had been credibly established by a preponderance of the evidence, this Court would have held that there is coverage under the policy and that the typewritten declarations would have controlled the printed exclusion."

The trial court reasoned, however, that under applicable Federal Aviation Regulations, Harry Marson, at the time of the accident was carrying a passenger in the helicopter; that he was not properly certificated; that he did not thereby meet the requirements described in said

*Item 8* and was thereby excluded from coverage under *Item 2(b)* of the "EXCLUSIONS" of the policy. The trial court opined that said *Item 8* was not intended to be controlling or even material to the initial question of coverage, but was merely a declaration of the plaintiff's representations concerning the identity of the person piloting the helicopter. We disagree with that legal conclusion.

A careful reading of the printed provisions of the policy in conjunction with the typewritten insertion of *Item 8* reveals an anomaly which would titilate the imagination of the most sophisticated minds of the esoteric community of practicing insurance policy draftsmen. Even counsel for the appellee would seem to admit the problem by stating: "This is a case where the draftsman did put in words which mean nothing. The words 'helicopter rating' are surplusage."

The practical solution, however, in determining the existence or extent of coverage under an insurance contract lies not in resolving conflicting views concerning obscure refinements, as are exemplified by this contract; rather, it is in arriving at a fair interpretation of the words of the policy by a reasonable person in the insured's position. *See, Thompson v. State Automobile Mutual Insurance Co.,* 122 W. Va. 551, 554, 11 S.E.2d 849, 850 (1940). For this reason, the courts have uniformly adopted and maintained the cardinal rule of construction that clauses in insurance contracts should be construed liberally in favor of the insured. *Thompson v. State Automobile Insurance Co., supra; Hamlet v. American Fire Ins. Co.,* 107 W. Va. 687, 690, 150 S.E. 7, 8 (1929); *Cook v. Citizens Insurance Company of Missouri,* 105 W. Va. 375, 376, 143 S.E. 113, 114 (1928). Such rule is of course subject to the equally established rule that construction should not be applied to contravene the intention of the parties, and that policies of insurance, like other contracts, must receive a reasonable interpretation consonant with the apparent object and plain intent of the parties. *Kanawha Investment Co. v. Hartford Steam Boil-*

*er Inspection and Ins. Co.*, 107 W. Va. 555, 557, 149 S.E. 605, 606 (1929).

Appellant relies primarily upon the rule of construction that in the interpretation of a contract partly printed and partly written or typewritten, where there appears an irreconcilable repugnance and conflict between the written and printed portions thereof, the former will prevail over the latter. *See, Gabbert v. William Seymour Edwards Oil Co.*, 76 W. Va. 718, 86 S.E. 671 (1916).

On the other hand, counsel for the appellee contends that such rules of construction are not applicable where, as here, the provisions of the contract may be read as unambiguous and reconcilable. *International Nickel Co., Inc. v. Commonwealth Gas Corp.*, 152 W. Va. 296, 163 S.E.2d 677 (1968); *Lewis v. Dils Motor Co.*, 148 W. Va. 515, 135 S.E.2d 597 (1964); *Magnus v. Halltown Paper Board Co.*, 143 W. Va. 122, 100 S.E.2d 201 (1957).

As indicated by the trial court's reasoning in its findings of fact and conclusions of law, it is, perhaps, possible to interpret the provisions of this insurance contract to exclude coverage under the facts in this case. Such interpretation, however, must be predicated not only upon the suggestion of counsel for appellee that the words "helicopter rating" are surplusage, but upon the assumption that the whole of *Item 8* is surplusage.

*Item 8* of the "DECLARATIONS" purports to provide coverage while the designated aircraft is piloted by Harry Marson, "provided he is a private or commercial pilot certificated by the FAA having a minimum of 1900 logged flying hours including 200 hours on helicopters" or any other properly certificated helicopter pilot. The quoted exclusion on the other hand, purports to preclude coverage in any situation where the aircraft is being piloted by one not properly certificated under applicable Federal Air Regulations "whether said pilot is designated in the Declarations or not."

Had *Item 8*, as written, simply designated or identified Harry Marson as one of the aircraft's pilots, the provi-

sions of the policy could have been easily reconciled. However, since *Item 8* also prescribed the conditions of Harry Marson's eligibility for coverage, an irreconcilable conflict between the quoted portions of the "DECLARA-TIONS" and the "EXCLUSIONS" was thereby created. This policy, therefore, constitutes a classic example of patent ambiguity or repugnancy, and for this reason, not only admits of construction, but requires it.

Thus, applying the rule recognized in *Gabbert v. William Seymour Edwards Oil Co., supra,* we hold that the typewritten provisions of the "DECLARATIONS" prevail over the printed provision of the "EXCLUSIONS." Accordingly, coverage was afforded under this policy upon proper showing of the conditions of *Item 8,* to-wit: "provided he [Harry Marson] is a private or commercial pilot properly certificated by the FAA having a minimum of 1900 *logged* flying hours including 200 hours on helicopters. . . ." (emphasis supplied), notwithstanding the exclusion clause in the printed standard form.

The trial court, as noted, made a factual determination that Harry Marson had 1,549 hours and 4 minutes logged flying time and 123 hours and 30 minutes logged helicopter flying time. Though evidence of additional flying time was admitted during the trial, the court, in arriving at its decision, ultimately rejected all evidence other than that reflected by the logbooks, reasoning that the "best evidence" was the personal logbook kept by Harry Marson.

It is not altogether clear from the trial court's findings and conclusions whether or not "logged" flying time would have been considered if any such additional time had been recorded in lost or destroyed logbooks. Nevertheless, such a determination was unnecessary in this case by reason of the fact that plaintiff's evidence did not attempt to show "logged" time destroyed or unavailable, but rather, merely purported to establish the decedent's total flying time.

Counsel for appellant argues that the best evidence of time spent by Mr. Marson in flying various types of

aircraft would have been his testimony; that since Mr. Marson had been killed in the accident, the best evidence available was that adduced by the plaintiff. That position is not tenable in view of the requirements of the policy and the general law.

This Court, it seems, is firmly committed to the "best evidence" rule. *State ex rel. Alderson v. Holbert*, 137 W. Va. 883, 74 S.E.2d 772 (1953); *Farley v. Farley*, 136 W. Va. 598, 68 S.E.2d 353 (1951); *Thompson v. Turkey Gap Coal & Coke Co.*, 104 W. Va. 134, 139 S.E. 642 (1927). And although "there are some holdings which indicate a different view, it is generally held that the best evidence rule applies only to documentary evidence." *State ex rel. Anderson v. Holbert, supra*, at page 890. With regard to the substitution of oral for documentary evidence, the general rule is appropriately stated in 29 Am. Jur. 2d *Evidence* § 448 (1967):

> "It is now generally recognized that the 'best evidence' phrase denotes only the rule of evidence which requires that the contents of an available written document be proved by introduction of the document itself. Thus, where proof is to be made of some fact which is recorded in a writing, the best evidence of the contents of the writing consists in the actual production of the document itself, and the contents of the document may not, as a general rule, be proved by oral testimony, unless the failure to produce the document itself is properly accounted for. The best evidence rule rests on the fact that a document is a more reliable, complete, and accurate source of information as to its contents and meaning than anyone's description."

Since, therefore, the invocation and applicability of the best evidence rule depends upon the nature of the evidence to be adduced—*i.e.*, whether documentary or oral in origin—the determinative issue of admissibility in this case depends upon whether the insurance policy required, as a condition precedent of coverage, proof of recorded ["logged"] flying time, or whether the policy

simply required proof of flying time, the recordation of which was merely collateral or incidental thereto.

In support of the argument that the condition of eligibility in the policy did not necessarily require "logged" flying time, counsel for appellant cites and contends for the result reached in *Schroeder v. Federal Insurance Company*, 343 Mass. 472, 179 N.E.2d 328 (1962). In that case, the applicable declaration of the policy provided coverage while the aircraft was being operated by a certificated pilot "possessing not less than 250 hours total flying time and approved by the insured." *Item 3* of the "General Conditions" of that policy required, among other things, that claims be supported by exhibit of the aircraft "and of logbooks ... kept in order as required by Federal Regulations ...." That court held that the policy in question did not restrict proof of the pilot's flying time to that recorded in a logbook.

> "The only reference to logbooks relied upon is that of the final paragraph of item 3 of the 'General Conditions' already quoted. This we interpret merely as requiring (at the request of the insurer) presentation of available logbooks in support of claims. It does not specifically preclude proof of flying time by evidence other than the contents of logbooks. If only this special method of proof of flying time was to be permitted and if production of logbooks showing flying time was to be a condition precedent to any recovery, then an explicit provision to that effect should have been made in the rider or elsewhere in the policy. Any such provision also should have been made expressly applicable to the rider provision limiting operation of the aircraft to pilots with stated hours of flying experience. Accordingly, we apply the principle that 'every doubt is to be resolved against the insurer and in favor of the insured.'" [Citations omitted.] *Id.*, at 330.

Unlike the *Schroeder* case, *Item 8* of the "DECLARATIONS" of the policy in this case specifically refers to

"logged flying hours." The *Schroeder* case, therefore, is not in point.

Appellant cites *Republic Aero, Inc. v. North American Underwriters*, 462 S.W.2d 635 (Tex. Civ. App. 1970), for the proposition that a court will not write a limitation of liability into a policy of insurance where none exists. While the proposition is sound, the facts are not analogous. In that case, the insurance policy required that the named pilot have "500 hours total time including 150 hours MEL [Multi Engine Land Aircraft] time." The evidence revealed that the pilot had in excess of 500 hours total time of which approximately 300 hours had been logged, with more than 200 additional hours of actual manipulation of the controls of an airplane in flight with a duly licensed pilot in command. Upon the defendants' assertion that the time another pilot was in command was not a part of the "total time" under the policy, the court held that although such time would not meet the experience requirements of the FAA, such time satisfied the requirements of the insurance policy. In the instant case, the requisite number of "logged" flying hours is an express requirement of the policy.

Although we find no decision in point which gives precise definition or legal significance to the word "logged", we believe the requirement of the declaration that Mr. Marson have a minimum of 1900 "logged flying hours including 200 hours on helicopters ...." requires just that—that is, 1900 qualifying hours logged in a record book. This is not to say that proof of logged flying time could not be established under proper circumstances by evidence other than the actual production of the logbooks. Nevertheless, such proof would not properly entail evidence of mere flying time, *i.e.*, time not logged in some manner.

In arriving at our decision, we need not take judicial notice of the sanctity, if any, accorded the "logging" of flying time. We do, however, recognize a degree of solemnity with which such journalized entries are made. Under these circumstances, the express requirement of the

"DECLARATIONS" pertaining to "logged flying time" is sufficiently significant in our view to warrant recognition of the requirement and application of the policy provision as written. The "best evidence," therefore, was an entry in a logbook. For this reason, and in view of the evidence adduced in this case, we affirm the trial court in its determination that the plaintiff failed to establish by competent evidence the pilot's qualifications under the terms of the policy.

For the reasons stated, we affirm the decision of the Circuit Court of Randolph County.

*Affirmed.*