453 S.E.2d 356

**Adnan N. SILK, M.D., and Maha Silk, Plaintiffs Below,**

v.

**FLAT TOP CONSTRUCTION, INC., Ron D. Wood, Individually and as Officer of Flat Top Construction, Inc., Defendants Below.**

**CRAFT BUILDERS, INC., and Robert C. Gallagher, Individually and as President of Craft Builders, Inc., Defendants and Third–Party Plaintiffs Below and Appellants,**

v.

**UNITED STATES FIDELITY AND GUARANTY COMPANY, Third–Party Defendant Below and Appellee.**

No. 22155.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 21, 1994.

Decided Dec. 15, 1994.

W.A. Thornhill III, Beckley, for appellants.

Mary H. Sanders, Huddleston, Bolen, Beatty, Porter & Copen, Charleston, for appellee.

PER CURIAM:

At issue in this appeal is whether the appellee and third-party defendant below, United States Fidelity and Guaranty Company (USF & G), has a duty to defend its insureds, the appellants and third-party plaintiffs below, Craft Builders, Inc., and Robert C. Gallagher, individually and as President of Craft Builders, Inc. The appellants seek coverage under their commercial general liability policy for allegations of breach of contract, intentional misrepresentation, and negligence arising out of their consulting and supervising the construction of a home.

I.

The plaintiffs below, Adnan Silk, M.D., and Maha Silk, acted as their own general contractor when they were building their home. They employed Flat Top Construction, Inc. (Flat Top), as the primary subcontractor. The appellants entered into an agreement to serve as supervisory consultants with respect to the construction of the home.[1] Various

---

1. The supervisory consultant agreement dated July 13, 1990, states, in pertinent part:
    "It is agreed that the Consultant will look after all interests of the Owner as it pertains to the construction of a two-story home.... The nature of the Consultant's work will include the review of all blueprints, plot plans, permits, contract agreements, specifications, invoices and related matters. The Consultant will negotiate sub-contractor agreements and inspect the sub-contractor's work for the culmination of a quality home using quality materials and quality workmanship...."

disputes arose between the plaintiffs, Flat Top, and the appellants.

On June 24, 1992, the plaintiffs filed suit in the Circuit Court of Raleigh County against Flat Top and appellants, alleging that Flat Top exceeded its estimated construction cost of approximately $500,000 by more than $380,000, and that eighteen months passed before they could occupy the house, when substantial completion of the home was to occur within eight months from the date of the contract.

The plaintiffs allege that the appellants breached the supervisory consultant agreement. Specifically, plaintiffs allege the appellants:

"did not fulfil their obligation to attain a timely completion of the house;

". . . did not properly supervise and inspect the work on the house as it was completed nor did . . . [appellants] properly inspect the materials of construction for appropriateness;

". . . failed to supervise the expenditures made for labor, materials and equipment which supervision was necessary to avoid excessive cost overruns;

". . . failed to ensure that the construction of the house conformed to the Contract Documents and plans."

The plaintiffs further allege that appellants acted in a "wilful, wanton and reckless manner" by failing to notify them of the construction deficiencies and cost overruns, and by knowingly making false representations that Flat Top was complying with the terms of its contract. The appellants' acts and omissions were also characterized as negligent.

"These administrative functions will be performed by Craft Builders office staff. Mr. Jim Simms, Craft Builders general construction superintendent, will periodically inspect and advise, along with Mr. Gallagher, the Sub-contractors in the execution of their work. It is understood that Flat Top Construction will have a full time job foreman on the project for continuous supervision and continuity.

"The Consultant will endeavor with all due means to expedite the completion of the home within the estimated time of eight (8) months. The fee to be paid by the Owner to Craft Builders, Inc. is Twenty-five Thousand Dollars ($25,000.00). . . .

Upon receipt of the complaint, the appellants contacted USF & G to provide them with defense and insurance coverage pursuant to a comprehensive general insurance policy. USF & G refused to defend. It relied upon the exclusionary language of the policy covering liability assumed pursuant to contract and intentional acts. On February 1, 1993, the appellants filed a third-party complaint against USF & G alleging that it had both the duty to defend and indemnify under the terms of the policy.

USF & G moved for summary judgment. The circuit court reviewed the supervisory consultant agreement, the complaint, and the insurance contract. On October 7, 1993, the circuit court held that under the terms of the policy, USF & G had neither the duty to defend nor to indemnify the appellants.

II.

Recently, in Syllabus Points 1 and 2 of *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994), this Court addressed the granting of summary judgment:

"1. A circuit court's entry of summary judgment is reviewed *de novo*.

"2. ' "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963).' Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992)."

"Supervisory and consulting work will be continued as required without additional fee for these project plans' only for a period of six (6) months beyond the occupancy of the home. Any out-of-pocket expense for telephone, travel, etc. will be charged at cost to the Owner.

"The Owner will act as the general contractor and assume all liabilities related thereto. . . .

"Because of the size of job and the limited amount of the consulting fee, Craft Builders, Inc. and Mr. R.C. Gallagher will be held harmless and without financial exposure in any and all aspects of this project."

We begin our analysis by discussing when an insurance carrier has the duty to defend an insured. Concededly, an insurer must meet a rigorous standard to avoid its obligation to defend.

"As a general rule, an insurer's duty to defend is tested by whether the allegations in the plaintiff's complaint are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy. *See generally* 7C J. Appleman, [*Insurance Law and Practice*] § 4683 [ (Berdal ed. 1979) ]; 14 G. Couch, [*Cyclopedia of Insurance Law*] § 51.42 [ (2nd ed. 1982) ]; 44 Am.Jur.2d *Insurance* § 1539 (1969); Annot., 50 A.L.R.2d 458 (1956). 'There is no requirement that the facts alleged in the complaint specifically and unequivocally make out a claim within the coverage.' . . .

"Furthermore, it is generally recognized that the duty to defend an insured may be broader than the obligation to pay under a particular policy. This ordinarily arises by virtue of language in the ordinary liability policy that obligates the insurer to defend even though the suit is groundless, false, or fraudulent." *Aetna Cas. & Sur. Co. v. Pitrolo,* 176 W.Va. 190, 194, 342 S.E.2d 156, 160 (1986). (Citations footnoted).[2]

However, "a liability insurer need not defend a case against the insured if the alleged conduct is entirely foreign to the risk insured against." *Horace Mann Ins. Co. v. Leeber,* 180 W.Va. 375, 378, 376 S.E.2d 581, 584 (1988).

In Syllabus Point 1 of *Marshall v. Fair,* 187 W.Va. 109, 416 S.E.2d 67 (1992), we state:

" 'Where the policy language involved is exclusionary, it will be strictly construed against the insurer in order that the purpose of providing indemnity not be defeated.' Syl. pt. 5, *National Mutual Ins. Co. v. McMahon & Sons, Inc.,* 177 W.Va. 734, 356 S.E.2d 488 (1987)."

■ In Syllabus Point 7, in part, of *National Mutual Insurance Company v. McMahon & Sons, Inc., supra,* we held that an insurance carrier relying on an exclusionary clause in a general liability policy to avoid the obligation to defend "has the burden of proving the facts necessary to the operation of that exclusion." USF & G does not dispute the facts asserted in the complaint. It relies on the facts, as asserted by the plaintiffs, to show it owes no duty to defend because the underlying case falls within the exclusionary provisions of the policy. We agree that the following two exclusionary provisions are applicable.

In the underlying claim, the plaintiffs seek damages for breach of contract. The policy does not extend coverage for breach of contract. It states, in part, that "[t]his insurance does not apply to: . . . 'Bodily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement."

The plaintiffs also contend that appellants knowingly made false representations that Flat Top was adequately meeting the terms of its contract in constructing the home.. The policy does not extend coverage for intentional acts. It states, in part, that "[t]his insurance does not apply to: . . . 'Bodily injury' or 'property damage' expected or intended from the standpoint of the insured."[3]

■ Because the above provisions are clear and unambiguous, we do not apply the

---

2. *"Union Mutual Fire Insurance Co. v. Town of Topsham,* 441 A.2d [1012] at 1015 [ (Me.1982) ]; *see also Afcan v. Mutual Fire, Marine & Inland Insurance Co.,* [595 P.2d 638 (Alaska 1979) ]; *Gray v. Zurich Insurance Co.,* 65 Cal.2d 263, 419 P.2d 168, 54 Cal.Rptr. 104 (1966) (in bank); *Vappi & Co. v. Aetna Casualty & Surety Co.,* 348 Mass. 427, 204 N.E.2d 273 (1965); *Brown v. State Automobile & Casualty Underwriters,* [293 N.W.2d 822 (Minn.1980) ]; *International Paper Co. v. Continental Casualty Co.,* 35 N.Y.2d 322, 320 N.E.2d 619, 361 N.Y.S.2d 873 (1974)."

3. *See generally* 11 George J. Couch, *Couch on Insurance* § 44:344 at 522 (2nd ed. 1982):

"A comprehensive general liability policy does not cover the insured contractor for breach of a contract grounded on faulty workmanship and materials where the only damages were for correcting the work. And the insured contractor's willful and knowing violation of contract specifications does not constitute an occurrence within policy coverage."

doctrine of reasonable expectations.[4] Therefore, the only remaining issue is whether USF & G has a duty to defend the appellants on the plaintiffs' allegations of negligence. USF & G argues that the plaintiffs' characterization of negligence was used merely to trigger the appellants' insurance coverage.

In determining whether the underlying action is merely one of breach of contract or is a tort claim, we find helpful the analysis set forth by the United States Court of Appeals for the Fourth Circuit in *City of Richmond, Va. v. Madison Management Group, Inc.,* 918 F.2d 438, 446 (4th Cir.1990):

> " 'The law of torts is well equipped to offer redress for losses suffered by reason of a "breach of some duty imposed by law to protect the broad interests of social policy." Tort law is not designed, however, to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement. That type of compensation necessitates an analysis of the damages which were within the contemplation of the parties when framing their agreement. It remains the particular province of the law of contracts.'

> [*Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.,*] 236 Va. [419] at 425, 374 S.E.2d [55] at 58 [ (1988) ]. As a sextant for determining whether 'the damages claimed in a particular case may more readily be classified' as having their origin in tort or contract, the court pointed out that '[t]he controlling policy consideration underlying the law of contracts is the protection of expectations bargained for.' *Id.* Having advised such close inspection of the complaint, the *Sensenbrenner* court noted that the complaint before it 'alleges no

facts showing a breach of any [duty owed by the defendants to the plaintiffs] imposed by law.' *Id.*"

Likewise, in the case at bar, a fair interpretation of the complaint shows a breach of only those duties owed to the plaintiffs under the terms of the supervisory consultant agreement. However, the appellants contend that they could nevertheless be held liable under a common law duty of care to supervise the construction of the home, as this Court created in *Sewell v. Gregory,* 179 W.Va. 585, 371 S.E.2d 82 (1988). We disagree.

In *Sewell,* we held a common law duty existed for a builder of a home to "exercise reasonable care and skill"; and, therefore, a subsequent homeowner could "maintain an action against a builder for negligence resulting in latent defects which the subsequent purchaser was unable to discover prior to purchase." Syllabus Point 4, in part, *Sewell, supra.* In *Sewell,* the home was constructed in 1975 and sold three years later. Two months after the new owners moved in, heavy rains caused flooding throughout the house which caused significant damage. The damage was a result of the negligent design and construction of the home.

In the case at bar, there was no such property damage.[5] The damages sought by the plaintiffs relate to cost overruns and delay in moving into the home. Therefore, we find the damages claimed herein have their origin solely in contract. Having previously determined that the contract exclusion provision is unambiguous, we conclude that the circuit court was correct in holding that USF & G had no duty to defend this suit. Therefore, the granting of summary judgment for USF & G was correct.

> "In West Virginia, the doctrine of reasonable expectations is limited to those instances, . . . in which the policy language is ambiguous. *Soliva [v. Shand, Morahan & Co., Inc.],* 176 W.Va. [430], at 433, 345 S.E.2d [33], at 36 [ (1986) ][.]"

---

**4.** See *National Mutual Insurance Co. v. McMahon & Sons, Inc.,* 177 W.Va. at 741–42, 356 S.E.2d at 495–96, where we stated:

"With respect to insurance contracts, the doctrine of reasonable expectations is that '[t]he objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations.' Keeton, *Insurance Law Rights at Variance with Policy Provisions,* 83 Harv.L.Rev. 961 (1970).

**5.** Because the facts of this case are distinguishable from *Sewell, supra,* we decline to address the appellants' request that we extend the common law duty of homebuilders to encompass supervisory consultants of home construction.

### III.

Based on the foregoing, the order of the Circuit Court of Raleigh County is affirmed.

Affirmed.

BROTHERTON, C.J., did not participate.

MILLER, Retired Justice, sitting by temporary assignment.