**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

VIENNA FAMILY MEDICAL ASSOCIATES,
INCORPORATED, a West Virginia
corporation,
<u>Plaintiff-Appellee,</u>

No. 95-1225

v.

ALLSTATE INSURANCE COMPANY, an
Illinois corporation,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the Southern District of West Virginia, at Parkersburg.
Charles H. Haden II, Chief District Judge.
(CA-94-471)

Argued: December 4, 1995

Decided: March 5, 1996

Before WILKINSON, Chief Judge, RUSSELL, Circuit Judge,
and THORNBURG, United States District Court Judge for the
Western District of North Carolina, sitting by designation.

_____

Reversed and remanded by unpublished per curiam opinion. Chief
Judge Wilkinson wrote a dissenting opinion.

_____

**COUNSEL**

**ARGUED:** Gordon Harrison Copland, STEPTOE & JOHNSON,
Clarksburg, West Virginia, for Appellant. James Hubert McCauley,

McCAULEY, WEBSTER, EMRICK & GARRISON, Belpre, Ohio, for Appellee. **ON BRIEF:** Amy M. Smith, Michael J. Florio, STEP-TOE & JOHNSON, Clarksburg, West Virginia, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Vienna Family Medical Associates, Inc. (Vienna) brought suit against Allstate Insurance Company (Allstate), its business liability insurer, seeking a declaratory judgment requiring Allstate to provide a defense and coverage for a claim based on harassment and hostile work environment. The district court found summary judgment as a matter of law and declared the insurer must defend and pay under the terms of the comprehensive business liability policy.**1** For the reasons stated below, we reverse the declaratory judgment and remand the case to the district court with instructions to enter judgment in favor of Allstate in accordance with this opinion.

This court has jurisdiction pursuant to 28 U.S.C.§ 1291 to review a judgment granting summary judgment as a matter of law.

The grant of summary judgment is reviewed de novo, employing the same standards used at the trial court level. Westfarm Assoc., L.P. v. Washington Suburban Sanitary Comn., 66 F.3d 669, 678 (4th Cir. 1995), petition for cert. filed, 64 U.S.L.W. 3439 (Dec. 22, 1995); Jackson v. Kimel, 992 F.2d 1318, 1322 (4th Cir. 1993); Fed. R. Civ. P. 56(c). Summary judgment is appropriate if there are no genuine disputes as to any material facts and the moving party is entitled to

_____

**1** The district court converted Allstate's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) to one for summary judgment because matters were considered outside the pleadings. Fed. R. Civ. P. 12(b)(6), 56.

2

judgment as a matter of law. Westfarm, supra; Fed. R. Civ. P. 56. "Where, as here, there are no material facts in dispute, summary judgment review turns solely on the question of whether the trial court properly construed the law." Fuisz v. Selective Ins. Co. of America, 61 F.3d 238, 241 (4th Cir. 1995).

The undisputed facts show that Vienna, a family medical association, employed Joyce Ruble as an office manager until 1992. In a separate state court action, Ruble alleged that from 1988 until the end of her employment, she encountered hostility from a physician employed by Vienna. At one point, she found notes prepared by that physician in which accusations were made against Drs. Richard Yocum and David Avery, Vienna's president and secretary. Those accusations reflected the physician associate's belief that Yocum and Avery were not properly distributing income to Vienna's physician employees. When Ruble disclosed this information to her employers, they insisted she provide them with a tape recorded statement. Ruble refused and, claiming the stress from these problems at work had made her ill, she took a period of sick leave.

While on leave, Vienna replaced her as office manager with a younger individual but offered her another job when she returned. Ruble sued Vienna, Yocum and Avery in state court for harassment, discrimination, and constructive discharge. Her complaint alleged the defendants had engaged in negligent, willful and intentional acts causing her emotional distress, lost disability payments and lost wages. Joint Appendix, at 65-66. Vienna settled the claim for $30,000; but, Allstate, which had issued Vienna's business liability policy, refused to defend the suit or fund the settlement.

Vienna and Allstate were parties to a comprehensive business liability insurance policy which provided in pertinent part:

> We will pay on behalf of persons insured all sums which they become legally obligated to pay as damages arising out of an accidental event, personal injury or advertising injury that occurs while this policy is in effect.

. . .

3

We will defend any suit brought against persons insured seeking damages to which this Part applies, even if the allegations in the suit are groundless, false or fraudulent.

. . .

The following people and organizations are persons insured under this Part:

. . .

4. If you are shown in the Declarations as any organization other than an individual, partnership or joint venture: Executive officers, stockholders, members of the board of trustees, and directors or governors while they are acting within the course and scope of their duties.

. . .

"Accidental event" means an accident, including continuous or repeated exposure to the same conditions, resulting in bodily injury or property damage. An accident cannot be intended or expected by any persons insured, except for the use of reasonable force to protect persons or property.

Joint Appendix, at 36-38, 53.

As noted by the district court, Vienna had three avenues of coverage under the policy: accidental event; personal injury or advertising injury. The court correctly concluded the alleged acts fell only under the definition of "accidental event" and reviewed the policy provisions for coverage, noting any ambiguities in the contract would be liberally construed in favor of the insured. See , Marson Coal Co., Inc. v. Insurance Co. of State of Pa., 158 W. Va. 146, 150, 210 S.E.2d 747, 750 (1974).

Because Ruble's complaint alleged both negligence and intentional conduct by Yocum and Avery, the district court determined an accidental event implicating coverage could have occurred. While the

4

court did not find intentional acts subject to coverage, it did conclude that Ruble's allegations of intentional acts in conjunction with negligent ones did not preclude coverage. Thus, the district court found the negligent acts of Yocum and Avery as insured persons would be covered under the clear and unambiguous terms of the policy.

On appeal, Allstate argues the district court relied on the language of one exclusionary clause without proper consideration of another such clause. Vienna argues, contrary to the decision which it seeks to uphold, that the exclusionary clauses in question are in conflict, rendering the policy provisions ambiguous and requiring a strict construction against Allstate which would result in coverage.

In determining the issue of coverage under this contract, "we must resolve this diversity action pursuant to [West Virginia] law because the case was [removed to] federal court in the[District of West Virginia]." Fuisz, 61 F.3d at 241 (citing Nguyen v. CNA Corp., 44 F.3d 234, 237 (4th Cir. 1995)). This court therefore applies West Virginia law to the undisputed facts. While the court below first considered the impact of the policy's exclusionary provisions, the definition of "accidental event" in the policy is dispositive of the case.

In the state court complaint, Ruble characterized Avery and Yocum's acts as "negligent, intentional and willful" conduct designed "to cause [her] severe emotional distress." Joint Appendix, at 60-63, 66. Often in the same paragraph in which conduct was characterized as negligent, Ruble referred to the intentional nature thereof, stating the conduct was "in retaliation for" (Joint Appendix, at 61, 63, 64, 65) her sick leave, alleging the defendants "created a hostile working climate" (Joint Appendix, at 61), refused benefits"with the intent of causing plaintiff severe emotional distress" (Joint Appendix, at 63), and acted "recklessly" and with "extreme and outrageous" conduct (Joint Appendix, at 65, 66). Ruble also claimed defendants had breached a contract to provide long-term disability benefits.

The insurance policy clearly excludes from the definition of "accidental" any conduct which is "intended or expected by any persons insured." Joint Appendix, at 53. At issue, then, is whether the commingled allegations of negligent and intentional acts by Yocum and Avery, insured persons, qualify as an accidental event.

5

In <u>Horace Mann Ins. Co. v. Leeber</u>, 180 W. Va. 375, 376 S.E.2d 581 (1988), the Supreme Court of Appeals of West Virginia ruled the exclusionary provisions of an insurance policy proscribing coverage for intentional acts applied to the sexual advances of a teacher to students, thus, prohibiting not only coverage under his homeowner's insurance policy but also precluding a duty to defend. In that case as well, the language of the complaint was framed in terms of both intentional and negligent acts. In rejecting the insured's attempt to bootstrap coverage by alleging negligence, the court stated

> the allegations of "negligence" in the complaint are "a transparent attempt to trigger insurance coverage by characterizing allegations of [intentional] tortious conduct under the guise of `negligent' activity. Our review of the complaint reveals that [the plaintiff in the underlying action] seeks recovery for the alleged intentional acts committed by [the insured]. Thus, there was no duty [on the insurer] to defend[.]"

<u>Id.</u>, at 381 (quoting <u>Linebaugh v. Berdish</u>, 144 Mich. App. 750, 763, 376 N.W.2d 400, 406 (1985)).

Here, although Ruble cloaked her allegations in the language of negligence, she clearly seeks recovery for intentional acts committed by Avery and Yocum: creating a hostile work environment by allowing an abusive physician employee to intimidate her and by demanding her to provide a tape recorded statement; retaliating against her sick leave by demoting her during her absence; breaching a contract to provide long-term sick benefits; and intentionally inflicting emotional distress. Thus, the presence of negligence allegations in the complaint does not defeat the clearly intentional nature of the acts involved. <u>Id.</u>; <u>see also</u>, <u>Silk v. Flat Top Constr., Inc.</u>, 192 W. Va. 522, 453 S.E.2d 356 (1994) (the inclusion of negligence allegations in a complaint for breach of contract and misrepresentation not sufficient to trigger the coverage of a general liability policy where claims grounded in contract). Because a review of the complaint reveals Ruble sought recovery for intentional conduct, Allstate had no duty to provide coverage. <u>See also</u>, <u>Fidelity and Guar. Ins. Underwriters, Inc. v. Everett I. Brown Co., L.P.</u>, 25 F.3d 484 (7th Cir. 1994) (insurer entitled to rely on the allegations of the complaint claiming inten-

tional conduct and thus there was no duty to defend or cover accidental events); First Nat'l Bank & Trust Co. of Williston v. St. Paul Fire & Marine Ins. Co., 770 F. Supp. 513 (D.N.D. 1991), aff'd, 971 F.2d 142 (8th Cir. 1992) (intentional conduct does not fall within definition of accident); Kline v. Kemper, 826 F. Supp. 123 (M.D. Pa. 1993), aff'd, 22 F.3d 301 (3rd Cir. 1994) (the discharge of an employee is an intentional act, not accidental, thus insurer has no duty to defend or pay); accord Providence Washington Ins. Group v. Albarello, 784 F. Supp. 950 (D. Conn. 1992); Russ v. Great American Ins. Cos., 1995 WL 754446 (N.C. App. 1995); St. Paul Fire & Marine Ins. Co. v. Campbell Co. School Dist. No. 1, 612 F. Supp. 285 (D. Wyo. 1985).

The ruling in Mann also disposes of the issue of duty to defend.

> An insurer's duty to defend is normally tested by whether the allegations in the complaint against the insured are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy. Consequently, there is no requirement that the facts alleged in the complaint against the insured specifically and unequivocally delineate a claim which, if proved, would be within the insurance coverage . . . [However], a liability insurer need not defend a case against the insured if the alleged conduct is entirely foreign to the risk insured against.

180 W. Va. at 378, 376 S.E.2d at 584. As seen from the allegations in the complaint, the conduct here was intentional. Thus, Allstate had no duty to defend.

Because the conduct was intentional, it is unnecessary to look past the issue of whether an accidental event occurred. However, because the parties addressed the policy's exclusionary provisions, a brief discussion follows.

Vienna argues the district court's ruling should be affirmed because the language of paragraphs 8 and 14 of the policy is ambiguous as a result of the following conflict: that paragraph 14 provides coverage for Ruble's bodily injury sustained as the result of Yocum

7

and Avery's conduct while paragraph 8 precludes coverage for the same conduct.[2] With this argument we disagree.

Paragraph 8 precludes coverage for bodily injury sustained by an employee of an insured person (Yocum and Avery) unless assumed under a separate contract. There is no contention that such a separate contract exists. Paragraph 14(a) precludes coverage for bodily injury to an employee by another employee acting within the course and scope of employment. Paragraph 14(b) precludes coverage for injury to an insured person (Yocum and Avery) by employees acting within the scope of their employment. Paragraph 14 is then followed by the exception that sections (a) and (b) do not apply to Avery and Yocum as officers of Vienna.

Vienna would apply the exception to paragraph 14(a) to mean that bodily injury to an employee resulting from the activities of Yocum

_____

[2] The policy provides in pertinent part:

"Bodily injury" means injury, sickness or disease and includes death that results from injury, sickness or disease.

. . .

We do not cover:

. . .

8. Any bodily injury to anyone employed by any persons insured unless such bodily injuries are assumed under a contract or agreement that is not excluded.

. . .

14. Any liability for:

a. Bodily injury to any of your employees that result from the activities of another employee(s) who is acting within the course and scope of their employment.

b. Bodily injury to you, your partners or joint venturers that result from the activities of your employee(s) who are acting within the course and scope of their employment.

(a) and (b) above do not apply to executive officers, directors or stockholders.

Joint Appendix, at 40-42, 53.

8

and Avery would be covered under the policy. The flaw in this argument is the presumption that the exception applies to bodily injury to an employee caused by Yocum and Avery. Instead, the exception means that bodily injury <u>to</u> Yocum and Avery, as officers, by Vienna employees would be covered under the policy. Thus, the exclusion of paragraph 14(a) which applies to Vienna's employees injured by employees is not altered by the exception.

The language of the exclusions is clear and unambiguous and does not warrant judicial interpretation. <u>Rich v. Allstate Ins. Co.</u>, 191 W. Va. 308, 309, 445 S.E.2d 249, 250 (1994); <u>Ward v. Baker</u>, 188 W. Va. 569, 575, 425 S.E.2d 245, 251 (1992). Paragraph 8 is meant to preclude coverage for injury to employees unless assumed under a separate contract.

Appellee argues the West Virginia doctrine of reasonable expectations mandates coverage. That doctrine is stated as follows:

> [w]ith respect to insurance contracts, the doctrine of reasonable expectations is that "the objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations."

<u>Silk</u>, 192 W. Va. at 526 n.4, 453 S.E.2d at 360 (quoting Keeton, <u>Insurance Law Rights at Variance with Policy Provisions</u>, 83 Harv.L.Rev. 961 (1970)). However, "[i]n West Virginia, the doctrine of reasonable expectations is limited to those instances . . . in which the policy language is ambiguous." <u>Id.</u>"Because the [quoted] provisions [in this case] are clear and unambiguous, we do not apply the doctrine. . . ." <u>Id.</u>

This court understands that "an exclusion in a general business liability policy should not be so construed as to `strip the insured of protection against risks incurred in the normal operation of his business.'" <u>Nat'l Mutual Ins. Co. v. McMahon & Sons, Inc.</u>, 177 W.Va. 734, 742, 356 S.E.2d 488, 496 (1987) (citations omitted). However, harassment, retaliation, and a hostile work environment are not "risks incurred in the normal operation" of Vienna's business.

9

Such conduct is not the type of "technical encumbrance[ ]" or "hidden pitfall[ ]" which the doctrine of reasonable expectation covers. Id. Although exclusionary language in a contract of insurance is construed against the insurer, such construction does not mandate coverage or defense where "the alleged conduct is entirely foreign to the risk insured against." Mann, 180 W. Va. at 378, 376 S.E.2d at 584. Such is the case here.

In view of our ruling that the policy does not cover the events in question, we do not address appellee's contention that West Virginia courts would interpret the injuries at issue to come within the policy's definition of bodily injury. However, we do note the significant weight of authority from other states holding that the phrase "bodily injury" does not encompass "nonphysical injuries," such as emotional distress. American States Ins. Co. v. Hanson Indus., 873 F. Supp. 17, 27 (S.D. Tex. 1995) (citing Travelers Indem. Co. v. Holloway, 17 F. 3d 113, 115 (5th Cir. 1994) (citing Nat'l Casualty Co.v. Great Southwest Fire Ins. Co., 833 P.2d 741, 746 (Colo. 1992))); (also citing United Pac. Ins. Co. v. First Interstate Bancsystems , 690 F. Supp. 917, 918 (D. Mont. 1988); West Am. Ins. Co. v. Bank of Isle of Wight, 673 F. Supp. 760, 765 (E.D. Va. 1987); Continental Casualty Co. v. Synalloy Corp., 667 F. Supp. 1550, 1559 (S.D. Ga. 1985), aff'd, 826 F.2d 1024 (11th Cir. 1987); American & Foreign Ins. Co. v. Church Sch. in the Diocese, 645 F. Supp. 628, 632 (E.D. Va. 1986); Rolette County v. Western Casualty & Sur. Co., 452 F. Supp. 125, 130 (D.N.D. 1978); Allstate Ins. v. Diamant, 401 Mass. 654, 518 N.E.2d 1154, 1156 (1988); Presidential Hotel v. Canal Ins. Co., 188 Ga. App. 609, 373 S.E.2d 671, 672 (1988); E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co., 106 Wash.2d 901, 907, 726 P.2d 439, 443 (1986)); see also, Kline, supra ; Providence Washington Ins. Group, supra; St. Paul Fire & Marine Ins. Co., supra.

Finally, Vienna argues without citation that the district court erred in determining that Ruble's lost wages do not qualify as property damage under the terms of the policy.[3]  However, property damage is
_____

[3] The policy provides in pertinent part:

>  "Property damage" means physical damage to, or the destruction of, any tangible property, including any losses that result because the damaged or destroyed property can no longer be used.

Joint Appendix, at 55.

10

covered only if an accidental event has occurred. Because the intentional acts of Yocum and Avery were not accidental events, the issue of whether Ruble sustained bodily injury and property damage need not be considered. See, Vaughner v. Pulito, 804 F.2d 873 (5th Cir. 1986); West American Ins. Co., supra (even if bodily injury included emotional distress, allegations of intentional torts are not covered by insurance policy); E-Z Loader Boat Trailers, Inc., supra, (the act of discharging an employee is intentional and thus not covered; retaliatory action against an employee also intentional and thus not covered).

The declaratory judgment below is reversed and the case is remanded with instructions to the district court to enter summary judgment as a matter of law in favor of appellant and a declaratory judgment in accordance with this opinion.

REVERSED AND REMANDED

WILKINSON, Circuit Judge, dissenting:

I respectfully dissent. Vienna Family Medical Associates purchased a comprehensive business liability policy from Allstate Insurance. In construing the scope of that policy, we must interpret any ambiguities in favor of the insured and any exclusions narrowly against the insurer. See Marson Coal Co. v. Insurance Co., 210 S.E.2d 747, 750 (W. Va. 1974). As the district court found, application of these familiar canons to the policy at issue here requires that we rule in favor a duty to defend.

The policy provides protection for "accidental events" that result in "bodily injury or property damage." "An accident," according to the policy, "cannot be intended or expected by any persons insured." Throughout her complaint in the underlying action, the plaintiff repeatedly alleged that Vienna's employees "negligently" caused her injuries, using the term "negligent" on at least six occasions. Injuries that are negligently inflicted are not "intended or expected," and fall within the definition of an "accident" under the policy.

In deciding otherwise, the majority picks apart the plaintiff's claims and determines that they ultimately allege intentional conduct.

11

Such conclusions cannot be drawn from the face of this complaint. "As a general rule, an insurer's duty to defend is tested by whether the allegations in the plaintiff's complaint are <u>reasonably susceptible</u> of an interpretation that the claim <u>may be</u> covered by the terms of the insurance policy. `There is no requirement that the facts alleged in the complaint specifically and unequivocally make out a claim within the coverage.'" <u>Aetna Cas. & Sur. Co. v. Pitrolo</u>, 342 S.E.2d 156, 160 (W. Va. 1986) (emphasis added) (citations omitted). Moreover, a complaint by its very nature will characterize the defendants' conduct in the least favorable light; here the plaintiff had every incentive to cast the defendants' actions as intentional. After reviewing the evidence, however, a jury could well find that the injuries were not intentionally inflicted. For example, the allegations that Drs. Avery and Yocum created a hostile environment by allowing third-party misconduct are a far cry from the direct sexual advances alleged in <u>Horace Mann Ins. Co. v. Leeber</u>, 376 S.E.2d 581 (W. Va. 1988), the chief case on which the majority depends.

The requirement that the accidental event result in "bodily injury" is also satisfied here. The policy defines bodily injury to include "injury, sickness, or disease," a definition broad enough to encompass the stress-induced conditions suffered by the plaintiff. Moreover, none of the policy's exclusions should be construed to bar coverage here. Exclusion 14 prohibits coverage for bodily injury suffered at the hands of a coemployee. That provision is inapplicable, since it expressly does not pertain to executive officers and directors such as the defendants in the underlying action. Exclusion 8, meanwhile, bars coverage for any "bodily injury to anyone employed by any persons insured unless such bodily injuries are assumed under a contract or agreement that is not excluded." Not only is this provision confoundingly ambiguous; it also appears to conflict with other terms and to undermine coverage that the policy otherwise seems to provide. To the extent that this exclusion can even be understood, it should be construed against the insurer.

Allstate agreed to provide comprehensive business coverage on behalf of Vienna, for which Vienna presumably paid an appropriate premium. The insurer should be held to its duties absent some demonstration of noncoverage. I agree with the district court that Allstate

12

should not be permitted to escape its contractual obligations. It follows that I would affirm the judgment.

13